USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1046 UNITED STATES OF AMERICA, Appellee, v. JOSEPH BREWSTER, a/k/a PATRICK BREWSTER, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, Senior U.S. District Judge] __________________________ _________________________ Before Selya, Cyr and Stahl, Circuit Judges. ______________ _________________________ Richard K. Corley on brief for appellant. _________________ Edwin J. Gale, United States Attorney, and Gerard B. _______________ __________ Sullivan, Assistant United States Attorney, on brief for the ________ United States. _________________________ July 28, 1993 _________________________ SELYA, Circuit Judge. After selling drugs and a gun to SELYA, Circuit Judge. _____________ an undercover federal agent, defendant-appellant Joseph Patrick Brewster pled guilty to a two-count indictment charging him with distribution of cocaine, see 21 U.S.C. 841(a)(1) (1988), and ___ with being a convicted felon in possession of a firearm, see 18 ___ U.S.C. 922(g) (1988). Brewster appeals from the imposition of sentence, claiming that the district court impermissibly inflated the offense level applicable to the crimes of conviction, and, further, that the government violated his rights by manipulating a crucial sentencing factor. We affirm. I. BACKGROUND I. BACKGROUND We take the relevant facts from the pre-sentence investigation report (PSI Report) and the transcript of the sentencing hearing. See, e.g., United States v. Connell, 960 ___ ____ ______________ _______ F.2d 191, 192-93 (1st Cir. 1992). Over the course of a month, Special Agent Matthew Horace of the federal Bureau of Alcohol, Tobacco and Firearms, acting in an undercover capacity, met with appellant several times to discuss the possibility of buying drugs and guns. On June 3, 1992, their discussions came to fruition: Brewster sold Agent Horace a small amount of crack cocaine (for $20), and, within an hour of that transaction, also sold him an automatic weapon (for $100). Soon thereafter, a grand jury returned the indictment that undergirds this appeal. On October 27, 1992, appellant entered a plea of guilty to both counts of the indictment. The government agreed to 2 recommend a prison term at the low end of the guideline sentencing range (GSR), but without representing what the applicable range might be. In accepting Brewster's plea, the district court (prophetically, as matters turned out) warned appellant that it would be impossible to predict the severity of his sentence until the court examined the PSI Report and computed the GSR. In mid-December, the PSI Report emerged. Based on Agent Horace's assertion that Brewster sold him the gun with reason to believe that it would be used to protect a drug operation, the probation officer recommended a four-level increase in appellant's offense level pursuant to U.S.S.G. 2K2.1(b)(5).1 Seeking to forfend application of the enhancement, appellant propounded a written objection challenging the recommendation's factual basis. He also requested an evidentiary hearing. The district court granted the latter request, and convened a hearing on January 7, 1993. Appellant claimed that he had been blindsided because the government had not informed him, ____________________ 1The guideline provides: If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by four levels. U.S.S.G. 2K2.1(b)(5) (Nov. 1992). 3 prior to his entry of a guilty plea, that facts existed sufficient to ground an enhancement under section 2K2.1(b)(5). The judge thereupon offered appellant the opportunity to withdraw his plea.2 After consulting with counsel, appellant declined the judge's invitation. The hearing proceeded. Agent Horace testified along the lines adumbrated in the PSI Report. He stated, in essence, that he told appellant from the outset both of his aspiration to become a drug dealer and of his need for a weapon to facilitate that nefarious plan. After cross-examining Horace, appellant renewed his objection to the use of Horace's testimony. The court again proposed that he retract his plea. When appellant demurred, the court overruled his objection. Appellant then testified to his own behoof, denying that he knew of any link between the weapon and Horace's planned drug trafficking at any time prior to the sale. Upon completion of the hearing, the district court made an explicit finding that appellant sold the firearm with knowledge of the buyer's intended (narcotics-related) use of the weapon. The court applied U.S.S.G. 2K2.1(b)(5) and sentenced Brewster to a prison term of fifty-one months (the high end of the resultant GSR). This appeal followed. II. PROPRIETY OF THE ENHANCEMENT II. PROPRIETY OF THE ENHANCEMENT Appellant challenges the district court's deployment of ____________________ 2To its credit, the government forthrightly conceded that it had not specifically informed appellant of Agent Horace's detailed version of the relevant events at any time prior to, or during, the change-of-plea hearing. 4 U.S.S.G. 2K2.1(b)(5) on two principal bases. We find both facets of the challenge to be unpersuasive. A. Reliance on Undisclosed Information. A. Reliance on Undisclosed Information. ___________________________________ Appellant argues that a sentencing court cannot rely on evidence not known to a defendant at the time he tenders his plea. We disagree. Absent bad faith and the district court found no bad faith in this instance the critical time for disclosure of sentence-related information is not prior to the taking of a plea, but prior to sentencing. See, e.g., Burns v. ___ ____ _____ United States, 111 S. Ct. 2182, 2186 (1991) (discussing the need ______________ for "full adversary testing" of facts relevant to a defendant's sentence); United States v. Berzon, 941 F.2d 8, 18 (1st Cir. _____________ ______ 1991) (explaining that a sentencing court may only rely on information in determining a defendant's sentence if the defendant has been given notice of the information and a fair opportunity to meet it); United States v. Curran, 926 F.2d 59, 63 _____________ ______ (1st Cir. 1991) (holding that a defendant should be given advance warning of, and an opportunity to challenge, information used to influence severity of sentence); United States v. Picard, 464 ______________ ______ F.2d 215, 220 & n.9 (1st Cir. 1972) (requiring that defendant and counsel receive some indication of the information which may influence the sentencing decision to ensure that the right to speak "in mitigation of punishment" is meaningful); see also Fed. ___ ____ R. Crim. P. 32. The district court scrupulously honored this principle 5 in the case at hand. The PSI Report discussed all the pertinent information in satisfactory detail. Through that medium, appellant received ample advance warning of Agent Horace's allegations (the PSI Report was made available to him on December 18, 1992, approximately three weeks before sentencing took place). He had an opportunity to challenge the allegations at an evidentiary hearing.3 He exercised the opportunity. No more is exigible. Relatedly, appellant argues that it was fundamentally unfair to "spring" the information on him only after he had entered a guilty plea. But, although sandbagging is never to be condoned, we see no unfairness here. Appellant was a percipient participant in the negotiations with Horace and, therefore, chargeable with knowledge of what was said. Moreover, the district court repeatedly offered him the opportunity to withdraw his plea after he had read the PSI Report and fully acquainted _____ himself with the adverse information. Having freely elected not to rescind his plea, appellant can scarcely be heard to complain that the timing of the prosecution's disclosure placed him at an unfair disadvantage. B. Sufficiency of the Evidence. B. Sufficiency of the Evidence. ___________________________ ____________________ 3We note that, in convening an evidentiary hearing, the district court, solicitous of appellant's rights and sensitive to his predicament, went the extra mile. Cf., e.g., United States ___ ____ _____________ v. Tardiff, 969 F.2d 1283, 1286 (1st Cir. 1992) (holding that a _______ defendant is not automatically, or even usually, entitled to a full-blown evidentiary hearing at the time of sentencing); United ______ States v. Shattuck, 961 F.2d 1012, 1014-15 (1st Cir. 1992) ______ ________ (similar). 6 The next question concerns the sufficiency of the evidence relied upon by the lower court in applying section 2K2.1(b)(5). Examining a district court's application of a sentencing guideline calls a bifurcated process into play: the court of appeals reviews the guideline's legal meaning and scope de novo, see United States v. St. Cyr, 977 F.2d 698, 701 (1st __ ____ ___ _____________ _______ Cir. 1992), but reviews the sentencing court's factbound determinations only to screen out manifestations of clear error. See id. ___ ___ As to meaning and scope, the guideline in question demands a four-level upward adjustment when the sentencing court finds that a defendant transferred a firearm with "knowledge, intent, or reason to believe" that it "would be used or possessed in connection with another felony." U.S.S.G. 2K2.1(b)(5). In United States v. Sanders, 990 F.2d 582, 585 (10th Cir. 1993), the _____________ _______ court, observing the dearth of expository comment anent this guideline, concluded that the Sentencing Commission promulgated section 2K2.1(b)(5) in an "explanatory vacuum" and, therefore, adopted a plain-meaning approach to its interpretation. We follow the Tenth Circuit's lead. The settled rule that courts should strive to apply the guidelines as written, see Stinson v. ___ _______ United States, 113 S. Ct. 1913, 1915 (1993); United States v. _____________ _____________ Jones, ___ F.2d ___, ___ (1st Cir. 1993) [No. 93-1189, slip op. _____ at 6], has a necessary corollary: in deciphering the guidelines, words in common usage, not specially defined, should be accorded their ordinary meaning. 7 Giving the phrase "in connection with" its ordinary meaning leaves no doubt but that the dispositive issue in this case turns on credibility. If Agent Horace's recital of the relevant events is accurate, then appellant sold the gun with reason to believe that his customer planned to use it in connection with drug trafficking, and a sufficient nexus exists between the weapon and the drug trafficking to warrant imposition of the enhancement. If, however, Brewster's account is true, then the existence of an adequate nexus becomes a much more dubious proposition. Since appellant's sufficiency challenge reduces to the bald assertion that Agent Horace's inculpatory testimony was not worthy of credence a question of fact we limit appellate review to the search for clear error.4 We discern none. The conflict in the evidence could scarcely be clearer. On one hand, Brewster implored the court below to credit his version of the events that the only time he heard Agent Horace ____________________ 4To be sure, appellant also argues that, as a matter of law, section 2K2.1(b)(5) does not contemplate enhancing a defendant's sentence based only on the uncorroborated testimony of one person. However, he cites no meaningful authority for this proposition, and it runs counter to all the usual rules that apply in the sentencing phase of a criminal trial. See, e.g., ___ ____ McMillan v. Pennsylvania, 477 U.S. 79, 91-92 & n.8 (acknowledging ________ ____________ that "[s]entencing courts have always operated without constitutionally imposed burdens of proof" when considering the level of a defendant's sentence); United States v. Tardiff, 969 _____________ _______ F.2d 1283, 1287 (1st Cir. 1992) (stating that "the sentencing court has broad discretion to determine what data is, or is not, sufficiently dependable to be used in imposing sentence"); U.S.S.G. 6A1.3 (explaining that, in sentencing, courts may consider any relevant piece of information that possesses "sufficient indicia of reliability to support its probable accuracy"). 8 discuss his intended use for the weapon was in court, and, court to believe Agent Horace who testified that Brewster knew of his intentions, no reasonable person would believe the self- furthermore, he adds on appeal that even if the agent had boasted aggrandizing pipe-dreams of a person who bought a mere $20 worth of crack cocaine. On the other hand, the prosecution urged the 9 from the deal. The government placed this layer of frosting on the cake, appellant says, for the sole purpose of bringing the fact. The district judge heard and saw the two protagonists. who buttressed this testimony with notes he had made soon after lie primarily within the realm of the district court. See St. ___ ___ judgment. prerogative indeed, his duty to make this sort of evaluative He chose to credit Agent Horace's version. It was his sentencing proceedings, as elsewhere, credibility determinations For all intents and purposes, that ends the matter. In his plans for the weapon from the start of the negotiations, and basis on which we can overturn the district court's credibility- based finding of fact. After all, "when there are two plausible and then, at the time of sale, when it was too late to retreat III. SENTENCING FACTOR MANIPULATION III. SENTENCING FACTOR MANIPULATION view cannot be clearly erroneous." Id. ___ views of the record, the sentencing court's adoption of one such his intended use for the firearm at all, he did so only once Appellant also contends that, if Agent Horace spoke of Cyr, 977 F.2d at 706. So it is here. There is no principled ___ section 2K2.1(b)(5) into play and, thus, increasing his likely sentence. This boils down to a claim of sentencing factor manipulation.5 See Connell, 969 F.2d at 194-97 (discussing ___ _______ criteria for potential claims of sentencing factor manipulation). We have previously expressed our concern that, particularly in sting operations, "exploitative manipulation of sentencing factors by government agents [may sometimes] overbear the will of a person predisposed only to committing a lesser crime." Id. at 196. That is an abiding concern but it is of ___ only marginal relevance here. The facts, as the district court supportably found them, see supra Part II(B), belie appellant's ___ _____ thesis. They do not so much as portray a case where, late in the day, an undercover agent deliberately raised the sentencing stakes in order to obtain a stiffer sentence for a criminal he was poised to arrest. Rather, Agent Horace's testimony credited, as we have said, by the district court makes it abundantly clear that appellant knew of his customer's proposed use for a weapon from the outset of their negotiations. When, as now, an offense-level enhancement results from a matter that formed part and parcel of the original negotiations between a government agent and his target, and the criminal venture proceeds on that basis, a claim of sentencing factor manipulation ____________________ 5Appellant describes the government's alleged activity as sentence entrapment. As we have pointed out, however, such phraseology tends to be misleading. We prefer the term "sentencing factor manipulation," which places the focus of judicial inquiry where it belongs on the government's activity not on whether the defendant would have committed the crime but for the government's influence. See Connell, 969 F.2d at 194. ___ _______ 10 will not lie. Accordingly, we reject this prong of Brewster's appeal. IV. CONCLUSION IV. CONCLUSION We need go no further. Because it clearly appears that the district court imposed a lawful sentence in a fair, unflawed proceeding, based on findings of fact that derive adequate support from the record, we summarily affirm the judgment below. Affirmed. See 1st Cir. Loc. R. 27.1. Affirmed. ________ ___ 11