USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-1411

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 CHARLES NUNEZ,

 Defendant, Appellant.

 
 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Frank H. Freedman, Senior U.S. District Judge]

 

 Before

 Selya, Circuit Judge,
 
 Campbell and Cyr, Senior Circuit Judges.
 
 

 Ronald Nacamuli, by appointment of the court, for appellant.
 Jennifer Zacks, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief, for the
United States.

June 25, 1998

 
 
 SELYA, Circuit Judge. Defendant-appellant Charles Nunez
asserts that we should set aside his conviction for, inter alia,
trafficking in destructive devices (in this case, pipe bombs)
because the government behaved badly. Secondarily, he mounts
claims of trial and sentencing error. Because Nunez's arguments
are unpersuasive, we affirm.
I. BACKGROUND
 While conducting an ongoing investigation into gang
activity in western Massachusetts, the authorities learned of a
person called "the Mexican," who had a reputation for building and
distributing pipe bombs in exchange for drugs or money. The
government concluded that Nunez was this individual and focused its
probe accordingly.
 At the authorities' instigation, a cooperating drug
dealer, Jose Colon, approached Nunez and told him that he "needed
[some pipe bombs] to blow up [a rival gang]." Nunez acquiesced,
but said that the task required raw materials. Colon, Nunez, and
an undercover officer thereafter drove to Connecticut and filled
Nunez's shopping list at government expense.
 Nunez constructed the pipe bombs and Colon purchased nine
of them for cash. Nunez, literally and figuratively, was hoist by
his own petard. After he had been arrested and advised of his
rights, he proclaimed that, although "he didn't mean to hurt
anyone," the pipe bombs were intended "for the gangs" because he
"didn't like the gangs and wanted to hurt gangs."
 The government's case at trial was compelling. It
featured Colon's testimony and tape-recordings of certain
conversations. It also included the testimony of an FBI explosives
expert to the effect that all nine pipe bombs were "destructive
device[s]" as defined in 26 U.S.C. 5845(f). The jury convicted
Nunez of possessing unregistered destructive devices, transferring
such devices, and being a felon in possession of a firearm. See 26
U.S.C. 5861(d) & (e) (1994); 18 U.S.C. 922(g)(1) (1994). At
the disposition hearing, Judge Freedman sentenced Nunez to a 120-
month prison term. This appeal followed.
II. DISCUSSION
 The appellant advances three separate and distinct
assignments of error. We deal with each of them in turn.
 A. Government Misconduct.
 The appellant's flagship argument targets the district
court's denial of his pretrial motion to dismiss the indictment on
the ground of egregious government misconduct. The question of
whether the government committed misconduct so outrageous as to
warrant the dismissal of charges is a question of law which we
review de novo. See United States v. Hudson, 982 F.2d 160, 163
(5th Cir. 1993).
 To the extent that it survives at all, the legal doctrine
on which the appellant's argument hinges is of extremely limited
application. The doctrine holds that the government commits
outrageous misconduct when it behaves in a manner that violates
"fundamental fairness" and "shock[s] . . . the universal sense of
justice." United States v. Santana, 6 F.3d 1, 4 (1st Cir. 1993)
(citations and internal quotation marks omitted). Courts
occasionally have applied (or talked about applying) the doctrine
in instances in which the government subjects a suspect to
intolerable abuses and those in which "law enforcement personnel
become so overinvolved in a felonious venture that they can fairly
be said either to have created the crime or to have coerced the
defendant's participation in it." Id. at 4-5 (citations and
internal quotation marks omitted). The appellant depicts his case
as involving both prototypes.
 There is no tidy test to determine whether government
conduct qualifies as outrageous. Thus, we have acknowledged that
"outrageousness, by its nature, requires an ad hoc determination." 
Id. at 6. Here, however, the appellant's trial counsel raised the
point only in a pretrial motion, bereft of any particularized
evidentiary submissions and unaccompanied by a request for a voir
dire or other evidentiary hearing. Consequently, the motion lacked
a sufficient factual predicate, and the district court's denial of
it hardly can be faulted. See id. (explaining that "[t]he calculus
[for determining the legitimacy of a claim of outrageous government
misconduct] must be rooted in the record").
 Even were we disposed to accept the belated factual
proffer contained in Nunez's appellate brief a proffer which
loosely incorporates the trial evidence, but laces that evidence
with considerable conjecture the result would be the same. The
appellant complains that the government's pursuit of him involved
the decision to use a drug dealer to negotiate with a drug addict,
and that the relationship between dealer and addict is so one-sided
as to undermine the independence of his decision to fill Colon's
request for pipe bombs. Passing the fact that Colon was at most an
occasional supplier of drugs to Nunez (who had other, more reliable
sources), this version of an addiction defense cannot stand. See,
e.g., United States v. Harris, 997 F.2d 812, 817-18 (10th Cir.
1993); United States v. Lyons, 731 F.2d 243, 245 (5th Cir. 1984)
(en banc); United States v. Moore, 486 F.2d 1139, 1146 (D.C. Cir.
1973) (en banc); cf. United States v. Ford, 918 F.2d 1343, 1348-50
(8th Cir. 1990). To put matters bluntly, the appellant cannot
strip himself of all moral agency by virtue of his drug addiction.
 Nunez also maintains that the government acted
outrageously by becoming overinvolved in the conception and
commission of the crime. This asseveration rests on facts such as
Colon's request for the pipe bombs, the escort afforded to Nunez
when he purchased the raw materials, and the fact that the
government fronted the cost. The record does not bear out the
claim that this conduct crossed the line of impropriety.
 The government had information from multiple sources that
Nunez previously had sold pipe bombs to gang members. The
government therefore did not create the crime, but, rather,
conducted a conventional undercover "sting" operation in an attempt
to confirm or refute this information. See, e.g., United States v.
Matiz, 14 F.3d 79 (1st Cir. 1994); United States v. Panitz, 907
F.2d 1267 (1st Cir. 1990); United States v. Porter, 764 F.2d 1 (1st
Cir. 1985). The jury rejected Nunez's entrapment defense at trial,
and there is simply no credible evidence either that Nunez was an
unready participant or that the government coerced him in any way.
 We summarize succinctly. Although an occasional early
case espoused the doctrine of outrageous government misconduct, we
recently described it as "moribund" and predicted that a defense
premised upon it will rarely, if ever, bear fruit. Santana, 6 F.3d
at 4 (reviewing the doctrine's history and concluding that "[t]he
banner of outrageous misconduct is often raised but seldom
saluted"). The instant case discloses no significant evidence of
government misconduct and clearly falls within this general rule,
not within the long-odds exception to it. Thus, the appellant's
claim fails on the merits.

 B. The Prosecutor's Summation.
 The appellant next posits that the prosecutor's summation
exceeded the bounds of permissible argument and thus violated due
process. He cites twenty-two allegedly improper remarks. As his
trial counsel did not object contemporaneously to any of these
statements, our review is for plain error. See United States v.
Mejia-Lozano, 829 F.2d 268, 272 (1st Cir. 1987); see also Fed. R.
Crim. P. 52(b). Plain-error analysis discourages quibbles. Under
it, we will consider only those errors that "seriously affect the
fundamental fairness and basic integrity of the proceedings
conducted below." United States v. Griffin, 818 F.2d 97, 100 (1st
Cir. 1987) (citations and internal quotation marks omitted).
 We have scrutinized the prosecutor's summation in light
of the transcript as a whole and have paid special attention to the
twenty-two specific instances spotlighted by Nunez's appellate
counsel. We see no need to recount book and verse. The
appellant's claims cover an array of supposed peccadilloes for
example, vouching for witnesses, mischaracterizing evidence, and
invading the jury's province but none of them are substantial. 
The prosecutor gave a vigorous summation, not an unfair one. It is
entirely proper for prosecutors to argue their cases zealously as
long as they do not stray into forbidden terrain and the
prosecutor's remarks in this case, taken in context, reflect no
more than acceptable zeal. In the last analysis, the appellant
confuses hard blows (which are permitted to a prosecutor) with foul
blows (which are proscribed).
 If more were needed and we do not think that it is we
note that, on plain-error review, the defendant has the burden of
demonstrating that impermissible statements "likely infected the
jury . . . and mere possibilities are not enough." United Statesv. Procopio, 88 F.3d 21, 31 (1st Cir. 1996). Nunez has wholly
failed to carry this burden. Even assuming, arguendo, that the
prosecutor on occasion sailed too close to the wind, the appellant
has presented no chain of logic that proceeds from prosecutorial
comment to likely jury influence. Absent such a linkage, even
problematic statements would not constitute grounds for reversal.
 To say more on this point would be supererogatory. 
Because the statements made by the prosecutor, whether viewed
singly or in the ensemble, did not threaten the fundamental
fairness of the trial, we reject this assignment of error.
 C. Sentencing.
 The appellant's claim of sentencing error focuses on the
district court's conferment of a four-level upward adjustment
pursuant to USSG 2K2.1(b)(5) (1995). An enhancement under section
2K2.1(b)(5) lies if the defendant possessed a firearm or explosive
"with knowledge, intent, or reason to believe that it would be used
in or possessed in connection with another felony offense." The
appellant offers a host of reasons to support his claim that the
district court improperly invoked this guideline. These reasons
boil down to three general contentions, namely, (1) that the
government adduced no evidence to show that Nunez possessed the
requisite guilty knowledge; (2) that there was no possible chance
that the bombs would be used or possessed in connection with a
felony because they were purchased by the government during an
undercover operation; and (3) that the guideline provision requires
a showing that the bombs were to be used to perpetrate a specificcrime (or, if not, the provision is at least ambiguous in this
respect, thus entitling Nunez to the benefit of a "specific crime"
interpretation under the rule of lenity) and the government made
no such showing.
 We start with the appellant's fact-based contention. Our
standard of review is familiar: an appellate court reviews a
district court's factual determinations under the sentencing
guidelines for clear error. See United States v. Brewster, 1 F.3d
51, 54 (1st Cir. 1993).
 In computing a defendant's guideline sentencing range,
the sentencing judge is entitled to rely on trial testimony. SeeUnited States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990). In this
case, Colon testified that he told Nunez he wanted the pipe bombs
for use against a rival gang. The district court apparently
credited Colon's account. We believe that this testimony 
substantiated by Nunez's post-arrest admission that he had
manufactured the pipe bombs because he "wanted to hurt gangs" 
adequately grounds Judge Freedman's finding that Nunez had "reason
to believe" the bombs would be used for the purpose of committing
another felony. Thus, the appellant's fact-based challenge
crumbles.
 The appellant's "impossibility" theory fares no better. 
Section 2K2.1(b)(5) focuses on a defendant's state of mind, not on
the feasibility of the venture that he proposes to undertake. SeeUnited States v. Gilmore, 60 F.3d 392, 393-94 (7th Cir. 1995)
(discussing mental state necessary to trigger section 2K2.1(b)(5)). 
Consequently, the fact that Nunez delivered the bombs as part of a
police-controlled undercover operation is legally irrelevant.
 This leaves us with the appellant's statutory arguments. 
We review a district court's construction of a sentencing guideline
de novo, see United States v. McDonald, 121 F.3d 7, 9 n.1 (1st Cir.
1997), and its application of a sentencing guideline to the facts
in the same manner, see United States v. Muniz, 49 F.3d 36, 41 (1st
Cir. 1995).
 The appellant argues vociferously that the government
must show that the defendant knew, intended, or had reason to
believe that the explosive device would be used in connection with
some specific felony offense. We do not agree. The plain language
of the provision encompasses other felonies generally, without the
additional requirement that some specific offense be identified. 
Accord United States v. Cutler, 36 F.3d 406, 408 (4th Cir. 1994). 
Sentencing guidelines, like statutes, should be read as they are
written. Therefore, we decline to insert into this guideline an
unwritten limitation plucked from thin air. That ends the matter: 
as USSG 2K2.1(b)(5) is unambiguous, the rule of lenity has no
bearing. See Cutler, 36 F.3d at 408; see also United States v.
Nippon Paper Indus. Co., 109 F.3d 1, 7 (1st Cir. 1997), cert.denied. 118 S. Ct. 865 (1998).
III. CONCLUSION
 We need go no further. The government neither behaved
outrageously nor otherwise committed misconduct requiring dismissal
of the indictment. Because Nunez was charged appropriately, tried
fairly, and punished lawfully, his conviction and sentence must be

Affirmed.