**UNITED STATES of America, Appellee,**

v.

**Charles NUNEZ, Defendant, Appellant.**

**No.  97–1411.**

United States Court of Appeals,
First Circuit.

Heard May 7, 1998.

Decided June 25, 1998.

Before SELYA, Circuit Judge, CAMPBELL and CYR, Senior Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Charles Nunez asserts that we should set aside his conviction for, *inter alia*, trafficking in destructive devices (in this case, pipe bombs) because the government behaved badly. Secondarily, he mounts claims of trial and sentencing error. Because Nunez's arguments are unpersuasive, we affirm.

## I. BACKGROUND

While conducting an ongoing investigation into gang activity in western Massachusetts, the authorities learned of a person called "the Mexican," who had a reputation for building and distributing pipe bombs in exchange for drugs or money. The government concluded that Nunez was this individual and focused its probe accordingly.

At the authorities' instigation, a cooperating drug dealer, Jose Colon, approached Nunez and told him that he "needed [some pipe bombs] to blow up [a rival gang]." Nunez acquiesced, but said that the task required raw materials. Colon, Nunez, and an undercover officer thereafter drove to Connecticut and filled Nunez's shopping list at government expense.

Nunez constructed the pipe bombs and Colon purchased nine of them for cash. Nunez, literally and figuratively, was hoist by his own petard. After he had been arrested and advised of his rights, he proclaimed that, although "he didn't mean to hurt anyone," the pipe bombs were intended "for the gangs" because he "didn't like the gangs and wanted to hurt gangs."

The government's case at trial was compelling. It featured Colon's testimony and tape-recordings of certain conversations. It also included the testimony of an FBI explosives expert to the effect that all nine pipe bombs were "destructive device[s]" as defined in 26 U.S.C. § 5845(f). The jury convicted Nunez of possessing unregistered destructive devices, transferring such devices, and being a felon in possession of a firearm. *See* 26 U.S.C. § 5861(d) & (e) (1994); 18 U.S.C.

Ronald Nacamuli, by appointment of the court, for appellant.

Jennifer Zacks, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for the United States.

§ 922(g)(1) (1994). At the disposition hearing, Judge Freedman sentenced Nunez to a 120–month prison term. This appeal followed.

## II. DISCUSSION

The appellant advances three separate and distinct assignments of error. We deal with each of them in turn.

### A. *Government Misconduct.*

■ The appellant's flagship argument targets the district court's denial of his pretrial motion to dismiss the indictment on the ground of egregious government misconduct. The question of whether the government committed misconduct so outrageous as to warrant the dismissal of charges is a question of law which we review de novo. *See United States v. Hudson,* 982 F.2d 160, 163 (5th Cir.1993).

To the extent that it survives at all, the legal doctrine on which the appellant's argument hinges is of extremely limited application. The doctrine holds that the government commits outrageous misconduct when it behaves in a manner that violates "fundamental fairness" and "shock[s] ... the universal sense of justice." *United States v. Santana,* 6 F.3d 1, 4 (1st Cir.1993) (citations and internal quotation marks omitted). Courts occasionally have applied (or talked about applying) the doctrine in instances in which the government subjects a suspect to intolerable abuses and those in which "law enforcement personnel become so overinvolved in a felonious venture that they can fairly be said either to have created the crime or to have ·coerced the defendant's participation in it." *Id.* at 4–5 (citations and internal quotation marks omitted). The appellant depicts his case as involving both prototypes.

There is no tidy test to determine whether government conduct qualifies as outrageous. Thus, we have acknowledged that "outrageousness, by its nature, requires an ad hoc determination." *Id.* at 6. Here, however, the appellant's trial counsel raised the point only in a pretrial motion, bereft of any particularized evidentiary submissions and unaccompanied by a request for a voir dire or other evidentiary hearing. Consequently, the motion lacked a sufficient factual predicate, and the district court's denial of it hardly can be faulted. *See id.* (explaining that "[t]he calculus [for determining the legitimacy of a claim of outrageous government misconduct] must be rooted in the record").

■ Even were we disposed to accept the belated factual proffer contained in Nunez's appellate brief—a proffer which loosely incorporates the trial evidence, but laces that evidence with considerable conjecture—the result would be the same. The appellant complains that the government's pursuit of him involved the decision to use a drug dealer to negotiate with a drug addict, and that the relationship between dealer and addict is so one-sided as to undermine the independence of his decision to fill Colon's request for pipe bombs. Passing the fact that Colon was at most an occasional supplier of drugs to Nunez (who had other, more reliable sources), this version of an addiction defense cannot stand. *See, e.g., United States v. Harris,* 997 F.2d 812, 817–18 (10th Cir.1993); *United States v. Lyons,* 731 F.2d 243, 245 (5th Cir.1984) (en banc); *United States v. Moore,* 486 F.2d 1139, 1146 (D.C.Cir.1973) (en banc); *cf. United States v. Ford,* 918 F.2d 1343, 1348–50 (8th Cir.1990). To put matters bluntly, the appellant cannot strip himself of all moral agency by virtue of his drug addiction.

■ Nunez also maintains that the government acted outrageously by becoming · overinvolved in the conception and commission of the crime. This asseveration rests on facts such as Colon's request for the pipe bombs, the escort afforded to Nunez when he purchased the raw materials, and the fact that the government fronted the cost. The record does not bear out the claim that this conduct crossed the line of impropriety.

The government had information from multiple sources that Nunez previously had sold pipe bombs to gang members. The government therefore did not create the crime, but, rather, conducted a conventional undercover "sting" operation in an attempt to confirm or refute this information. *See, e.g., United States v. Matiz,* 14 F.3d 79 (1st

Cir.1994); *United States v. Panitz,* 907 F.2d 1267 (1st Cir.1990); *United States v. Porter,* 764 F.2d 1 (1st Cir.1985). The jury rejected Nunez's entrapment defense at trial, and there is simply no credible evidence either that Nunez was an unready participant or that the government coerced him in any way.

We summarize succinctly. Although an occasional early case espoused the doctrine of outrageous government misconduct, we recently described it as "moribund" and predicted that a defense premised upon it will rarely, if ever, bear fruit. *Santana,* 6 F.3d at 4 (reviewing the doctrine's history and concluding that "[t]he banner of outrageous misconduct is often raised but seldom saluted"). The instant case discloses no significant evidence of government misconduct and clearly falls within this general rule, not within the long-odds exception to it. Thus, the appellant's claim fails on the merits.

### B. *The Prosecutor's Summation.*

■ The appellant next posits that the prosecutor's summation exceeded the bounds of permissible argument and thus violated due process. He cites twenty-two allegedly improper remarks. As his trial counsel did not object contemporaneously to any of these statements, our review is for plain error. *See United States v. Mejia–Lozano,* 829 F.2d 268, 272 (1st Cir.1987); *see also.* Fed. R.Crim.P. 52(b). Plain-error analysis discourages quibbles. Under it, we will consider only those errors that "seriously affect the fundamental fairness and basic integrity of the proceedings conducted below." *United States v. Griffin,* 818 F.2d 97, 100 (1st Cir. 1987) (citations and internal quotation marks omitted).

■ We have scrutinized the prosecutor's summation in light of the transcript as a whole and have paid special attention to the twenty-two specific instances spotlighted by Nunez's appellate counsel. We see no need to recount book and verse. The appellant's claims cover an array of supposed peccadilloes—for example, vouching for witnesses, mischaracterizing evidence, and invading the jury's province—but none of them are substantial. The prosecutor gave a vigorous summation, not an unfair one. It is entirely proper for prosecutors to argue their cases zealously as long as they do not stray into forbidden terrain—and the prosecutor's remarks in this case, taken in context, reflect no more than acceptable zeal. In the last analysis, the appellant confuses hard blows (which are permitted to a prosecutor) with foul blows (which are proscribed).

If more were needed—and we do not think that it is—we note that, on plain-error review, the defendant has the burden of demonstrating that impermissible statements "likely infected the jury ... and mere possibilities are not enough." *United States v. Procopio,* 88 F.3d 21, 31 (1st Cir.1996). Nunez has wholly failed to carry this burden. Even assuming, *arguendo,* that the prosecutor on occasion sailed too close to the wind, the appellant has presented no chain of logic that proceeds from prosecutorial comment to likely jury influence. Absent such a linkage, even problematic statements would not constitute grounds for reversal.

To say more on this point would be supererogatory. Because the statements made by the prosecutor, whether viewed singly or in the ensemble, did not threaten the fundamental fairness of the trial, we reject this assignment of error.

### C. *Sentencing.*

The appellant's claim of sentencing error focuses on the district court's conferment of a four-level upward adjustment pursuant to USSG § 2K2.1(b)(5) (1995). An enhancement under section 2K2.1(b)(5) lies if the defendant possessed a firearm or explosive "with knowledge, intent, or reason to believe that it would be used in or possessed in connection with another felony offense." The appellant offers a host of reasons to support his claim that the district court improperly invoked this guideline. These reasons boil down to three general contentions, namely, (1) that the government adduced no evidence to show that Nunez possessed the requisite guilty knowledge; (2) that there was no possible chance that the bombs would be used or possessed in connection with a felony because they were purchased by the government during an undercover operation;

and (3) that the guideline provision requires a showing that the bombs were to be used to perpetrate a *specific* crime (or, if not, the provision is at least ambiguous in this respect, thus entitling Nunez to the benefit of a "specific crime" interpretation under the rule of lenity)—and the government made no such showing.

 We start with the appellant's fact-based contention. Our standard of review is familiar: an appellate court reviews a district court's factual determinations under the sentencing guidelines for clear error. *See United States v. Brewster*, 1 F.3d 51, 54 (1st Cir.1993).

In computing a defendant's guideline sentencing range, the sentencing judge is entitled to rely on trial testimony. *See United States v. Ruiz*, 905 F.2d 499, 508 (1st Cir.1990). In this case, Colon testified that he told Nunez he wanted the pipe bombs for use against a rival gang. The district court apparently credited Colon's account. We believe that this testimony—substantiated by Nunez's post-arrest admission that he had manufactured the pipe bombs because he "wanted to hurt gangs"—adequately grounds Judge Freedman's finding that Nunez had "reason to believe" the bombs would be used for the purpose of committing another felony. Thus, the appellant's fact-based challenge crumbles.

The appellant's "impossibility" theory fares no better. Section 2K2.1(b)(5) focuses on a defendant's state of mind, not on the feasibility of the venture that he proposes to undertake. *See United States v. Gilmore*, 60 F.3d 392, 393–94 (7th Cir.1995) (discussing mental state necessary to trigger section 2K2.1(b)(5)). Consequently, the fact that Nunez delivered the bombs as part of a police-controlled undercover operation is legally irrelevant.

This leaves us with the appellant's statutory arguments. We review a district court's construction of a sentencing guideline de novo, *see United States v. McDonald*, 121 F.3d 7, 9 n. 1 (1st Cir.1997), and its application of a sentencing guideline to the facts in the same manner, *see United States v. Muniz*, 49 F.3d 36, 41 (1st Cir.1995).

The appellant argues vociferously that the government must show that the defendant knew, intended, or had reason to believe that the explosive device would be used in connection with some *specific* felony offense. We do not agree. The plain language of the provision encompasses other felonies generally, without the additional requirement that some specific offense be identified. *Accord United States v. Cutler*, 36 F.3d 406, 408 (4th Cir.1994). Sentencing guidelines, like statutes, should be read as they are written. Therefore, we decline to insert into this guideline an unwritten limitation plucked from thin air. That ends the matter: as USSG § 2K2.1(b)(5) is unambiguous, the rule of lenity has no bearing. *See Cutler*, 36 F.3d at 408; *see also United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 7 (1st Cir.1997), *cert. denied.* 118 S.Ct. 685 (1998).

### III. CONCLUSION

We need go no further. The government neither behaved outrageously nor otherwise committed misconduct requiring dismissal of the indictment. Because Nunez was charged appropriately, tried fairly, and punished lawfully, his conviction and sentence must be

*Affirmed.*