# United States Court of Appeals
## For the First Circuit

---

No. 01-2027

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN CARLOS GUZMAN,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Selya, Circuit Judge.

Juan R. Acevedo-Cruz on brief for appellant.
Guillermo Gil, United States Attorney, Jorge E. Vega-Pacheco, Assistant United States Attorney (Chief, Criminal Division), and Stella J. Song, Special Assistant United States Attorney, on brief for appellee.

---

March 8, 2002

---

**SELYA, Circuit Judge.** On April 28, 2001, United States Navy personnel arrested defendant-appellant Juan Carlos Guzman for trespassing on the premises of Camp Garcia, a military installation located on the island of Vieques, Puerto Rico.[1] The government thereafter filed an information charging the appellant, inter alia, with two Class B misdemeanors: count 1 — knowingly entering upon a naval installation for a purpose prohibited by law without first having obtained permission from the commanding officer, in violation of 18 U.S.C. § 1382; and count 2 — assault on a naval officer, in violation of 18 U.S.C. § 111(a)(1). A third count, which accused the appellant of assaulting a United States Deputy Marshal, was abandoned midstream and need not concern us.

The appellant moved to dismiss the charges due to outrageous government misconduct. The district court decided to take evidence on this motion and withheld an immediate ruling. On June 13, 2001, the court conducted a bench trial that doubled in brass as an evidentiary hearing on the motion to dismiss. The court denied the motion, found the appellant guilty on both remaining counts, and imposed concurrent sentences of forty-five

---

[1]There is some confusion in the record as to the correct spelling of the appellant's surname (which appears variously as "Guzman" or "Cuzman"). We employ the spelling that appears in both the indictment and the district court docket.

days' imprisonment on count 1 and ninety days' imprisonment on count 2. This timely appeal followed.

The appellant assigns error only to the district court's denial of his motion to dismiss. The facts touching upon this motion are largely undisputed. On April 27, 2001, the Navy, consistent with a previous announcement, commenced battle-preparedness exercises, including simulated bombing, near the island of Vieques. A swarm of protesters appeared. About fifty of them, including the appellant, tore down a portion of the fence that marked the perimeter of Camp Garcia and entered the base without permission. Once inside, they engaged in various forms of disruptive conduct. For his part, the appellant hurled rocks that hit and injured at least one petty officer.

The next day, the appellant again entered the base illegally. This time, naval security personnel apprehended him (along with approximately twenty other protesters). Pursuant to routine procedure, they handcuffed all the detainees and transported them by truck to a holding area. Processing proceeded along standard lines. The regimen included searching each detainee, completing necessary paperwork, and taking photographs.

At the holding area, two officers recognized the appellant as a rock-thrower from the previous day. They

-4-

promptly classified him as a security risk and segregated him from the other detainees. Naval personnel placed him on his knees with his cuffed hands against a wall and guarded him until he was called for processing. The appellant was kept in this position for, at most, seventy minutes.

The appellant was barefoot and clad in shorts when arrested. The floor of the yard in which he was held was of cement construction, and the venue was exposed to the elements (including the midday tropical sun). At one point, the appellant asked to be taken inside the detention center, but his request was denied.

The appellant was one of the last persons processed. The government asserts, without contradiction, that this was because security personnel were awaiting the arrival of a special agent of the Naval Criminal Investigative Service to conduct an investigation of the assault that had occurred on the previous day. After all the detainees (including the appellant) had been processed, they were transported to Roosevelt Roads Naval Station (about a two-hour boat ride) and arraigned there by a magistrate judge.

The appellant premises his claim of outrageous government misconduct on these events. In his counsel's words, the pat-down search of his clothing and body "can only be

-5-

characterized a[s] offensive, unnecessary and brutal."
Appellant's Br. at 12. Forcing him to kneel, barefooted, on a
cement floor, with his handcuffed hands over his head, for more
than one hour, amounted to "torture." Id. at 13. This inhumane
treatment was all the worse because he received no food or
water,[2] and was afforded no rest. Based on this view of the
record, the appellant argued below — as he does before us — that
the charges against him should be dismissed to sanction the
government and deter it from inflicting such indignities upon
prisoners in the future.

The district court, after hearing the evidence,
determined that the conduct of the arresting officers was not
outrageous, and refused to dismiss the charges. It observed
that the appellant "didn't get arrested for not praying in
church; [he] got arrested for rock throwing, hurting people, and
for trespassing." While the court indicated some disapproval of
the Navy's course of conduct and acknowledged that the
consequences to the appellant were not "pleasant," it concluded
that no valid basis existed for dismissal of the charges. The
court grounded this conclusion on its finding that the Navy's

---

[2]The record contains no indication that the appellant
requested food or water during this period.

handling of the matter did not "involv[e] extreme physical or psychological abuse to the defendant."

The district court's ultimate conclusion that the government was not guilty of misconduct sufficient to justify dismissal of the charges engenders de novo review. United States v. Nunez, 146 F.3d 36, 38 (1st Cir. 1998); United States v. Diggs, 8 F.3d 1520, 1523 (10th Cir. 1993). The court's factual findings, however, are reviewable only for clear error. United States v. Mateo, 271 F.3d 11, 13 (1st Cir. 2001).

In rare and extreme circumstances, a federal court has the authority to dismiss criminal charges as a sanction for government misconduct. United States v. Russell, 411 U.S. 423, 431-32 (1973); United States v. Mosley, 965 F.2d 906, 911 (10th Cir. 1992); see also Hampton v. United States, 425 U.S. 484, 491-95 (1976) (affirming the existence of the outrageous governmental misconduct doctrine articulated by the Russell Court) (dictum). But the law frowns on the exoneration of a defendant for reasons unrelated to his guilt or innocence, and, accordingly, the power to dismiss charges based solely on government misconduct must be used sparingly. See United States v. Santana, 6 F.3d 1, 10 (1st Cir. 1993) (warning that "[p]otent elixirs should not be casually dispensed"). It follows that the outrageous government misconduct doctrine is reserved for the

most appalling and egregious situations. See United States v. Barbosa, 271 F.3d 438, 469 (3d Cir. 2001). At the very least, the defendant must show that the challenged conduct violates commonly accepted norms of fundamental fairness and is shocking to the universal sense of justice. Russell, 411 U.S. at 432; Nunez, 146 F.3d at 38; United States v. Matiz, 14 F.3d 79, 82 (1st Cir. 1994).

Here, the challenged conduct does not cross the extremely high threshold of the outrageous government misconduct doctrine. The Navy was faced with large numbers of protesters, in a tense atmosphere. The appellant had committed a crime of violence — throwing rocks at naval personnel — and posed obvious safety concerns. The surroundings were fairly primitive, and circumstances forced the Navy to improvise. Such considerations matter. See Santana, 6 F.3d at 6 ("What shocks the conscience in a given situation may be acceptable, although perhaps grim or unpleasant, under a different set of circumstances."). Finally, the actions of which the appellant complains did not compromise his defense or prejudice his case. This is a consideration of some moment. See United States v. Voigt, 89 F.3d 1050, 1066 (3d Cir. 1996); see also Santana, 6 F.3d at 11 (explaining that federal courts ordinarily should "refrain from using the supervisory power to conform executive conduct to judicially

-8-

preferred norms by dismissing charges, absent cognizable prejudice to a particular defendant").

We need go no further. In this instance, the trial court's factual findings are solidly anchored in the record, and its legal conclusion follows logically from those findings. While the naval personnel involved in this incident certainly could have been more considerate in their handling of detainees, the measures that they took were roughly proportionate to the context in which the detention occurred. In all events, nothing about the officers' conduct was so clearly intolerable or so offensive to the universal sense of justice as to warrant jettisoning the charges. What transpired here was not pretty, but to call it "brutal torture," Appellant's Br. at 7, is to elevate hyperbole over common sense.

**Affirmed.**