# United States Court of Appeals

## For the First Circuit

No. 01-1129

UNITED STATES,
Appellee,

v.

DAVID MOLLOY,
Defendant, Appellant.

No. 01-2700

UNITED STATES,
Appellee,

v.

JASON ZAWADZKI,
Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lipez, Circuit Judge,
Coffin and Stahl, Senior Circuit Judges.

Aziz Safar for appellant Molloy.
Mark L. Stevens for appellant Zawadzki.
John T. McNeil, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

March 31, 2003

**LIPEZ, <u>Circuit Judge</u>**.  In this appeal we confront the narrow question of whether the district court clearly erred in imposing a four-level sentencing enhancement for two defendants pursuant to section 2K2.1(b)(5) of the United States Sentencing Guidelines (the "Guidelines").  This provision requires courts to increase a defendant's base offense level by four points if the defendant "possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  The items at issue are two live, high-explosive M-67 military fragmentation hand grenades that were stolen from a United States military facility and delivered to defendant Jason Zawadzki.

Zawadzki and co-defendant David Molloy were apprehended by federal law enforcement officials after attempting to sell the hand grenades to a government informant.  Both subsequently pled guilty to one count of possession of unregistered destructive devices and one count of transferring unregistered destructive devices.  Zawadzki, who at the time was serving a state sentence of home confinement, also pled guilty to a third count of felon-in-possession of firearms and ammunition.  For the reasons that follow, we conclude that the district court's decision to impose the four-level enhancement for both defendants is well grounded in the factual record and the relevant case law.  Accordingly, we reject the appellants' claims and affirm the decision below.

**I.**

In December 1999, Zawadzki arranged to obtain two M-67 hand grenades from David Joseph, a convicted felon who had earlier been deported to Canada. Joseph instructed his girlfriend to deliver the hand grenades to Zawadzki, who was confined to his home and required to wear an electronic monitoring device under the terms of his sentence for a prior state felony conviction. As part of his sentence, Zawadzki was also required to attend Alcoholics Anonymous meetings at the Essex County House of Correction Farm program. At one meeting, Zawadzki offered to sell the hand grenades to another convicted felon named David Santiago (a.k.a. "Tucky") whom the defendant knew to be a member of a street gang in Lawrence, Massachusetts, called the Outlaws.

After Tucky declined to purchase the grenades, Zawadzki contacted Molloy to request his assistance in finding a buyer. Molloy informed Zawadzki that he knew a member of the "Latin Gangsta Disciples" street gang named Luis Colon (a.k.a. "Slot") who would potentially be interested in purchasing the grenades for up to $1,000. The Disciples were declared enemies of the Outlaws who trafficked drugs and stolen weapons in North Lawrence. Molloy's knowledge of Slot's involvement with the Disciples stemmed from a several-month friendship between the two, during which time Molloy assisted Slot in selling a 9 mm handgun to a friend of Molloy's named "LaPoint." Molloy was also aware that Slot frequently

socialized with Victor Laboy (a.k.a. "Papito Bosero"), a known leader of the Disciples, and that Slot had been shot by Leslie Carabello, a member of the Outlaws. Unbeknownst to Molloy, however, Slot had recently become a cooperating witness for the Massachusetts State Police.

On January 23, 2000, Molloy approached Slot at a party in Lawrence and offered to sell him the two hand grenades. Molloy appeared anxious to unload the grenades, and attempted to accelerate the pace of negotiations by informing Slot that if he could not commit to purchasing the hand grenades quickly, Molloy would instead sell them to Tucky, whom both parties knew to be involved with the rival Outlaws. Slot left the party and telephoned Massachusetts State Trooper Frank Hughes, who instructed Slot to make the purchase the next day. On January 24, 2000, Slot contacted Molloy and, in a telephone conversation that was recorded by law enforcement agents, elicited from Molloy that the hand grenades belonged to a third party and that Molloy would need to retrieve them before the sale. During the conversation Molloy agreed to sell the grenades for $1200 -- $700 due at the time of purchase, and $500 to be paid once Slot verified the authenticity of the grenades. Slot agreed to meet Molloy at a location near Molloy's residence later that evening to complete the transaction.

After the phone conversation, the police provided Slot with $700 in marked bills and equipped him with a wire. That

evening, after several follow-up phone conversations, Slot drove to the agreed location, which turned out to be Zawadzki's residence. Molloy obtained the grenades from Zawadzki and gave them to Slot in exchange for the initial $700 payment. On January 25, after law enforcement officials confirmed that the hand grenades were "live" and authentic, Slot met with Molloy and paid him the outstanding balance of $500. The next day, Molloy approached Slot and offered to sell him other stolen weapons, including a pump-action shotgun and two handguns.

Between January 27 and February 1, Slot and Molloy had several conversations monitored by law enforcement agents to negotiate the price of the weapons and to make arrangements for the exchange. These recorded conversations, coupled with the earlier recorded discussions regarding the hand grenades, are the main subject matter of the dispute. The conversations reveal that Slot, prior to his purchase of the hand grenades, invented a fictitious third-party buyer for whom he was supposedly purchasing the weapons. Slot portrayed this fictitious buyer as a hostile individual with substantial knowledge of hand grenades, ostensibly to convince Molloy that the buyer would react negatively if Molloy attempted to sell him fake grenades. In one January 24 telephone conversation, Slot remarked that the fictitious buyer "don't want to get stiffed for that bullshit cuz he already got stiffed once,"

and represented that "this guy wants them you know . . . . He collects them shits I guess."

On the basis of these conversations and the recovered hand grenades, the police obtained a search warrant for Zawadzki's residence. While executing the warrant, the police recovered a pump-action shotgun, two handguns, and $200 of the cash payment that Slot made to Molloy. Molloy was subsequently arrested, and the two co-defendants eventually pled guilty to the aforementioned charges.

**II.**

To impose the four-level sentencing enhancement for Molloy and Zawadzki, the court was required to find, by a preponderance of the evidence, that the recorded conversations revealed that the co-defendants had "knowledge, intent, or reason to believe" that the hand grenades sold to Slot would "be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). The court concluded that the requirements of section 2K2.1(b)(5) were satisfied as to Molloy: "The tenor of the transcripts and all the circumstances convince the Court by a fair preponderance of the evidence that Mr. Molloy thought these grenades were going to be used in a felony." The court similarly imposed a four-level enhancement for Zawadzki, concluding that "there is significant evidence to warrant the inference that Mr. Zawadzki . . . in fact had reason to believe that the grenades

would be used or possessed in connection with another felony offense; and further, I find by a fair preponderance of the evidence that he did so believe."

Zawadzki and Molloy advance separate theories of error in the district court's sentencing determinations. The government concedes that Zawadzki had no knowledge of the fictitious third-party buyer invented by Slot; Zawadzki, in turn, argues that the government's proof that the defendants sold the grenades to a known gang member was by itself insufficient to trigger a four-level enhancement under U.S.S.G. § 2K2.1(b)(5). Molloy, on the other hand, insists that he had "reason to believe" that Slot would convey the grenades to an ex-marine who did not intend to use them in a felony, but wished to purchase them for his personal collection. We examine each of these arguments in turn, mindful of the deference that we accord a district court's factual findings: "If a party assigns error to a factual finding made at sentencing, we review the finding for clear error. In doing so, we ask only whether the court clearly erred in finding that the government proved the disputed fact by a preponderance of the evidence." United States v. Powell, 50 F.3d 94, 102-03 (1st Cir. 1995) (internal citation omitted).

1.  Zawadzki's claim of error

At Zawadzki's sentencing hearing, the government conceded that its "best evidence" supporting the court's application of

U.S.S.G. § 2K2.1(b)(5) was "that Mr. Zawadzki was selling to a gang member in the Lawrence area with knowledge of what was going on in the Lawrence area but no specific knowledge of any specific felony." Yet as Molloy and Zawadzki concede, we have previously interpreted section 2K2.1(b)(5) as requiring a four-level enhancement even where the defendant had no knowledge of a specific felony involving the transferred weapons:

> While appellant argues that the section requires knowledge of some specific offense, the use of the word "another" as the sole modifier of "felony offense" does not command such a narrow reading . . . . The First Circuit has looked at U.S.S.G. § 2K2.1(b)(5) and interpreted it to require an enhancement where the defendant was not aware of a specific felony offense to be committed with transferred guns.

United States v. Cutler, 36 F.3d 406, 408 (4th Cir. 1994) (citing United States v. Brewster, 1 F.3d 51, 54 (1st Cir. 1993)); see also United States v. Nunez, 146 F.3d 36, 40 (1st Cir. 1998).

However, Zawadzki insists that Slot's purported status as a gang member, without more, does not permit a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) as a matter of law. Superficially, he finds some support for this proposition in our prior cases. In Nunez, for instance, we upheld the district court's imposition of a four-level enhancement where the buyer approached the defendant and explicitly told him that he needed some pipe bombs "to blow up" a rival gang. Nunez, 146 F.3d at 37. Similarly, we determined in Brewster that the court was justified

-8-

in levying a four-level enhancement where the defendant sold an undercover police officer a handgun, and, within the hour, sold the same officer a small amount of crack cocaine. Brewster, 1 F.3d at 52. There we concluded that "appellant sold the gun with reason to believe that his customer planned to use it in connection with drug trafficking, and a sufficient nexus exist[ed] between the weapon and the drug trafficking to warrant imposition of the enhancement." Id. at 54. Here, only Slot's history of gang activity connects the sale of the grenades to the commission of a future felony.

Significantly, however, Nunez and Brewster do not purport to establish minimum evidentiary requirements for the application of section 2K2.1(b)(5). As the government persuasively argues, the simple fact that Zawadzki and Molloy were selling lethal explosive devices with almost no non-felonious uses distinguishes this case from much of the authority cited by appellants. Indeed, the Supreme Court observed in another context that "one would hardly be surprised to learn that possession of hand grenades is not an innocent act. They are highly dangerous offensive weapons." United States v. Freed, 401 U.S. 601, 609 (1971) (footnote omitted). Accordingly, one could hardly fault the district court for its common sense conclusion that individuals who transfer "offensive" and "dangerous" M-67 hand grenades to a known gang member have reason to believe that the weapons will be used in a subsequent felony. See United States v. Sklar, 920 F.2d 107, 112

-9-

(1st Cir. 1990) ("The law is not so struthious as to compel a judge, in making factbound determinations under the sentencing guidelines, to divorce himself or herself from common sense or to ignore what is perfectly obvious.").

The defendants point to nothing in the record that counters the validity of this inference. In fact, Zawadzki's counsel conceded at oral argument that the defendant attempted to peddle the grenades to members of two rival street gangs in the Lawrence area with a history of violent interaction. The defendants' efforts to solicit buyers with a predilection for violent behavior further vindicate the court's U.S.S.G. § 2K2.1(b)(5) determination. In the end, we find no clear error in the judge's reliance on circumstantial evidence and common sense to support the four-level enhancement.[1]

---

[1]Zawadzki briefly challenges his sentence on due process grounds, arguing that the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), requires the government to "allege in the indictment and prove to the jury each fact that supports an enhancement under the sentencing guidelines." According to Zawadzki, the district court violated the rule of Apprendi by exposing him to a greater statutory maximum sentence based on factual findings (made pursuant to U.S.S.G. § 2K2.1(b)(5)) that were not submitted to a jury. Frankly, in the absence of any elaboration of this argument, we fail to understand how the district court's application of the four-level enhancement exposed Zawadzki to a greater statutory maximum sentence.

In any event, the defendant concedes that on numerous occasions we have rejected Apprendi challenges in cases like this one, "where the sentencing enhancements do not result in a sentence in excess of the statutory maximum." See United States v. Lopez-Lopez, 282 F.3d 1, 22-23 (1st Cir. 2002); United States v. Robinson, 241 F.3d 115, 121-22 (1st Cir. 2001); United States v. Caba, 241 F.3d 98, 101 (1st Cir. 2001). Cognizant of this binding

-10-

2. Molloy's claim of error

Molloy asserts that "[l]eading up to the hand grenades' sale, [Slot] continually maintained that the third party purchaser was merely a collector who was an ex-marine . . . . His representation to the appellant was that as a collector, the purchaser dismantled them." At sentencing the judge expressly rejected this argument:

> I base the finding on this fictitious character that the undercover informant Slot made up. It just strains credulity in these circumstances, where these grenades are being passed about among street gangs, that Mr. Molloy in good faith thought some sort of out-of-state collector was going to get the grenades.

On appeal, Molloy attempts to resuscitate the "ex-marine" theory by pointing to two recorded conversations in which Slot indicated to Molloy that the fictitious buyer was an ex-marine. The record indicates that Slot did not even convey the fictitious buyer's identity until he picked up the hand grenades. Molloy then seemed apathetic about the prospect of selling the grenades to a collector as opposed to a gang member, exclaiming "big deal" before changing the subject of the conversation. The second conversation, which occurred on January 28 after the completion of the hand grenade sale, is more illuminating:

---

adverse precedent, Zawadzki expressly raises the Apprendi issue before us only to preserve it for possible Supreme Court review.

```
Molloy:      I want to see that dude use the grenades . .
             . That would be shit to see someone throw
             the grenades . . . Boom

Slot:        Yeah but . . . you know what I'm saying he
             just grabs them . . . That's what he does he
             got four of them dog . . . All different
             kinds

Molloy:      Are the other ones he has different than
             those ones?

Slot:        Yeah he got two of those same and he got
             some other ones are different they look like
             the fuckin they got like carbine in the
             middle in shit you know what I'm saying

Molloy:      That dude will he buy pipe bombs and shit

Slot:        Nigga yo this motherfucker be making his own
             shit yo

Molloy:      Oh he make pipe bombs and stuff

Slot:        He makes yo, yo whatever pipes . . . You
             know what I'm saying they're ready to blow
             shit up . . . This guy's a freakin used to
             be an ex-marine

Molloy:      He's one of those fucking army nuts

Slot:        He's a fucking nut dude . . . I'm afraid to
             be around that motherfucker, dog
```

As a threshold matter, Molloy argues that because this conversation occurred after the sale of the hand grenades, "the comments on use were inadequate indicators of the appellant's state of mind at the time of the sale." We disagree. As the government observes, "the enhancement focuses on the defendant's state of mind at the time he possessed or transferred the grenades." See Nunez, 146 F.3d at 40; United States v. Gilmore, 60 F.3d 392, 394 (7th Cir.

-12-

1995).  To the extent that Molloy's state of mind at the time of sale was ambiguous, his post-sale comments are a useful and relevant indicator of whether, prior to the sale, he had reason to believe that Slot would convey the grenades to a collector who never intended to use or possess them in connection with another felony offense.  Cf. James v. Marshall, No. 02-1352, slip op. at 11-12 (1st Cir. March 14, 2003) (where defendant's alleged invocation of Miranda rights is ambiguous, court may consider defendant's post-invocation statements to discern his state of mind at the time of the initial request).  The district court is entitled to scrutinize the record in its totality to determine whether a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) is warranted.  See United States v. James, 172 F.3d 588, 594 (8th Cir. 1999).  Hence, we find no clear error in the district court's consideration of Molloy's post-sale statements during sentencing.

Those statements, along with numerous others in the record, provide ample support for the district court's conclusion that Molloy had reason to believe that the grenades would be used in connection with another felony offense.  Slot did not portray the fictitious ex-marine as a benign hobbyist with an academic interest in military artifacts, but as "a fucking nut" who manufactured pipe bombs and other weapons and was "ready to blow shit up."  Indeed, Slot's characterization of the ex-marine seemed to persuade Molloy that the third-party buyer might detonate the weapons, prompting

-13-

Molloy to exclaim that he "want[ed] to see that dude use the grenades." In the end, the violent persona of the fictitious ex-marine and Slot's dogged persistence in ensuring that the hand grenades were live and authentic provided Molloy with a reason to believe that the grenades would be used in a subsequent felony -- a belief evidenced by Molloy's documented excitement at the possibility that the grenades would be detonated.

Molloy also asserts for the first time on appeal that because Slot portrayed the fictitious purchaser as the owner of numerous explosive devices, the buyer's procurement of two additional grenades could not have been "causally or logically" related to a future felony offense. We review for plain error. As the government recognizes, Molloy is essentially arguing that U.S.S.G. § 2K2.1(b)(5) "is inapplicable unless the evidence establishes that the defendant has reason to believe that the 'other felony offense' would not be committed absent the transfer." We agree with the government that this position is indefensible in light of our prior decisions construing the phrase "in connection with" broadly: "Although there must be a causal or logical relation or sequence between the possession and the related offense . . . we will find that a firearm has been used in connection with an offense if the possession has the potential to aid or facilitate the other crime." United States v. Peterson, 233 F.3d 101, 111 (1st Cir. 2000) (internal quotation marks omitted). Molloy's excited comments

to Slot reveal that he had reason to believe that the M-67 grenades would be detonated in the commission of a subsequent felony notwithstanding the ex-marine's existing collection of grenades. Hence there was no error, let alone plain error, in the district court's implicit determination that sufficient causation existed to warrant the four-level enhancement for Molloy.

## III.

For the foregoing reasons, we decline to overturn the district court's imposition of four-level sentencing enhancements for both defendants. The decision below is **<u>affirmed</u>**.

-15-